## BURRITT *v.* DICKSON, *et al.*

Where an individual, doing business under the firm name of "D. W. & Co.," incurred obligations for professional services to the plaintiff, an attorney, and pending the litigation of his matters, formed a partnership with two others, under the same firm name, and one of the new members of the firm thus formed subsequently dismissed the suit in the firm name, and when payment for the services was demanded, did not deny the liability of the firm, but refused payment and disputed the amount charged : *Held*, that the firm was estopped from denying their liability.

Though the plaintiff in such a case knew at the time he commenced suit for the original parties, that he alone composed the firm, yet if he do not appear to have known on what terms the new firm was formed, he could only be guided by the acts and statements of the new firm.

But where it was shown that the plaintiff's partner had drawn up the partnership articles of defendants : *Held*, that plaintiff was bound to know the terms on which the defendants' firm was formed, and that defendants had a right to presume such knowledge, and are not estopped by the acts above recited from denying their liability.

Before a party can urge an estoppel against another, he must be misled by the conduct of the other, as to facts known to the latter.

APPEAL from the Superior Court of the City of San Francisco.

This was a suit to recover compensation for professional services. The defendant Dickson did business under the style of Dickson, De Wolf & Co., and employed the late firm of Burritt & Gorham, as attorneys at law. Dickson was also the administrator of one Murray, deceased, and a portion of the professional services were rendered for him as such. Among other professional rendered by the firm of Burritt & Gorham, was the bringing of the suit of Dickson, De Wolf & Co. *v.* Chauviteau. The suit was brought by B. & G., in the name of H. N. Dickson, doing business under the style of Dickson, De Wolf & Co. After the suit had been pending a short time, a partnership was entered into by the defendants, Dickson, Campbell & Lott, under the same style of Dickson, De Wolf & Co., and the former business continued by the new firm. Dickson gave Campbell & Lott a power of attorney to attend to his business, and the case of Dickson, De Wolf & Co. *v.* Chauvitau, was dismissed by a written

direction, signed "Dickson, De Wolf & Co.," without any notice to the plaintiff's attorneys. The written direction was in the handwriting of the defendant Campbell. Some time after the dismissal of this suit, the plaintiff, as surviving partner, made out the account of the firm of B. & G., and called upon the defendants for payment. The items were separately stated, though the whole account was nominally in the name of H. N. Dickson. But in the letter of plaintiff he stated, that some " one thousand three hundred and fifty dollars of said account is chargeable, I suppose, to Mr. Dickson, indvidually. You will be able to distinguish those items for which the house is chargeable, from those on which he only is liable." The plaintiff, in addition to the letter, which was addressed to the firm, appended a memorandum to the account, in these words: "The foregoing account, is nominally, made out against Horatio N. Dickson. The precise amount, chargeable against Messrs. Dickson, De Wolf & Co., I am not able to state with certainty. I have supposed, however, that all that portion not appertaining to the estate of Murray, was chargeable to the firm. The first nine items, amounting to one thousand three hundred and fifty dollars, I therefore look to Mr. Dickson for. The balance, I suppose chargeable to the house." This letter was dated on the fourth of December, 1854, and not receiving any answer, the plaintiff wrote again on the eleventh ; and on the twelfth, Messrs. Dickson, De Wolf & Co. answered, saying: " We have received your letter of the fourth and eleventh instant ; the former enclosing an account of the firm of Burritt & Gorham against H. N. Dickson, and the firm of Dickson, De Wolf & Co., for three thousand and twenty-five dollars, and both demanding payment of that sum."

" In reply, we cannot forbear expressing our surprise and regret that you should have presented such a claim. We have carefully examined our books in relation to this matter, and believe, upon a just settlement, the firm of Messrs. B. & G., as well as the individual members of the same, will be found in our debt. We are, therefore, compelled to decline paying anything on your account, as you have rendered it." The plaintiff then brought his suit against the firm for those items not embraced in the nine items chargeable to Dickson. The case was referred to a referee, who reported a judgment in favor of the plaintiff for seven hundred and nine dollars. A motion was made to set aside the report, and *for a* new trial, which was overruled by the Court below, and judgment given for plaintiff, from which the defendants appealed to this Court.

*Glassell & Leigh* for Appellants.

*S. L. Burritt,* Respondent, in person.

Burritt *v.* Dickson.

BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, J., concurring.

The only matter of contest in this Court regards the item for professional services in the case of Dickson, De Wolf & Co. against Chauviteau. And the only ground upon which the liability of the firm, for this item, is contested, is that the charge is the individual debt of Dickson, incurred before the formation of the partnership.

The fact is certain that the plaintiff, at the time this suit was brought, knew that Dickson was the sole member of the house of Dickson, De Wolf & Co. But it is not shown that the plaintiff knew anything of the terms upon which the new firm was formed. The fact that defendant, Campbell, had dismissed the suit in writing, signed in the name of the firm, without any addition to the signature showing that it was done by an agent of Dickson, was a circumstance that went to show that the new firm had assumed the liabilities of Dickson. It was not the fact, that the name of Dickson, De Wolf & Co., was signed to the written direction, for this was proper, as that was the style of the suit; but it was the fact that the style of the new firm was used by one of that firm, without stating that he acted as the agent of Dickson.

This circumstance afforded the plaintiff a reasonable ground for supposing that the new firm took upon itself the liabilities of Dickson. He therefore stated to defendants, distinctly, that certain items he considered chargeable to Dickson, and would look to him for them, and that the other items he supposed chargeable to the firm. He demanded payment, and distinctly informed the defendants that if payment was not made, he would bring suit. It will be seen from their answer that they did not contest the correctness of the *apportionment* of the items made by plaintiff between Dickson and the firm, but contested only the justice of the claims. The plaintiff, by this course, was induced to bring his suit against the firm. If they had intended to deny the liability of the firm, they were bound to apprise the plaintiff of their intention. As they knew he was about to bring suit, and was in doubt as to what party to sue, they were bound, in answer to his note, to state candidly who was liable for this item, if not already paid. The services had been rendered, and some party was certainly liable for whatever sum was still justly due.

When a party pursues a certain line of conduct, by which he has induced others to act, he is estopped from afterwards avoiding the consequences of his conduct. Greenl. on Ev., 195 § 27. The defendants, knowing that plaintiff was laboring under a mistake as to the proper party to sue for this item, were bound, in justice and fair-dealing, to put him in possession of correct information. His statement to them was clear and explicit, and they made no objection to the conclusion he had drawn that the firm

was accountable for this item. It would seem, therefore, that they had estopped themselves from contesting it upon that ground. Having expressly based their resistance to the claim upon other grounds, and having omitted this, to which their attention was explicitly called, it is too late, after suit brought, to set up such a defence. It has been waived, and could not be afterwards asserted.

For these reasons, it would seem that the judgment of the Court below is correct, and should be affirmed.

MURRAY, C. J.—I am compelled to dissent from the opinion of my brethren in this case, for the reason that I do not think that the defendants can fairly be considered as having admitted any indebtedness due from them to the plaintiff. The record shows that Gorham, a former partner of Burritt, the plaintiff, had, at various times, borrowed money from the defendants, and I think that the letter of the defendants in reply to that of the plaintiff, does not admit the correctness of the particular items of the plaintiff's account, but was written under the supposition that Gorham was authorized to receive the amount due the firm, and that any payment made to him might be legally offset against the account which the plaintiff had against either the old or new firm. Under these circumstances, I do not think that the defendants can be fairly said to have admitted the correctness of the plaintiff's account, and they ought not to be charged with the same.

A rehearing having been granted, BURNETT, J., at this term, delivered the opinion of the Court—MURRAY, C. J., concurring.

This case was decided at the last April Term of this Court, and the judgment of the Court below affirmed. In that opinion we say: "But it is not shown that the plaintiff knew anything of the terms upon which the new firm was formed."

In the petition of defendants for a rehearing, our attention has been called to a portion of the record which shows that we were in error in reference to this matter of fact.

In January, 1854, a bill of items was made out by Mr. Gorham, in the name of the firm of B. and G., consisting of some fourteen particulars, and furnished by him to the defendants. In that account, there is a charge of fifty dollars against the firm of Dickson, De Wolf & Co., for drawing articles of copartnership. The whole amount of this account was five hundred and seventy-five dollars, and at the close of the account transmitted by the plaintiff to defendants, in his letter of December 4th, 1854, they are charged with, "amount of bill rendered by A. Gorham against Dickson, De Wolf & Co., five hundred and seventy-five dollars.

Before the trial, the plaintiff furnished to defendants' counsel a

Burritt v. Dickson.

bill of particulars, which, by stipulation, is made a part of the record. In this bill of particulars there is a copy of the bill of five hundred and seventy-five dollars, furnished by Mr. Gorham, and the *whole* bill is designated as "the first item" in the report of the referee, which rejects this bill as not established by proof. There being no question made as to this bill, and no allusion made in the briefs of either party on appeal, to the fact that the articles of copartnership of the new firm of Dickson, De Wolf & Co., were drawn up by the firm of Burritt & Gorham, the separate items of this "first item" were not examined by us, and in this way this most material matter was entirely overlooked. These facts, taken in connection with the fact that the articles of copartnership were introduced on the trial before the referee, by the plaintiff, show that he did know the terms upon which the new firm was formed. And from the articles of copartnership, it is at once seen that the new firm did not take upon them the former liabilities of H. W. Dickson.

This knowledge on the part of the plaintiff, as to the terms of the partnership of defendants, entirely changes the aspect of the case. The plaintiff, under such circumstances, had no just right to suppose the new firm liable, and it was very natural on the part of defendants, knowing that the firm of B. & G. had drawn the copartnership articles, and that plaintiff knew the fact from the account furnished by himself on the fourth of December, that they should not give the information already in the possession of plaintiff. Before a party can urge an estoppel against another, he must be misled by the conduct of the party, in a case where he is ignorant of facts known to the party against whom the estoppel is alleged. If he knows the facts himself, or has the means of knowing them within his own control, he has no right to throw the labor of communicating them upon others.

In this case, it is very probable that the copartnership articles were drawn up by Mr. Gorham, and that the plaintiff, in making out the account on the fourth of December, did not examine the items of the bill previously furnished by his deceased partner. But this circumstance could not justify the plaintiff. Notice to his partner was notice to him.

For these reasons, the judgment of the Court below should be reversed, and a new trial granted.